**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: Family Dollar Stores, Inc., Pest Infestation Litigation<br><br>This Document Relates To:<br><br>ALL CASES | Case No. 2:22-md-03032-SHL-tmp<br>(MDL Docket No. 3032) |

<u>**INTERVENOR'S SUPPLEMENTAL BRIEF**</u>

**Table of Contents**

Table of Authorities.................................................................................................ii

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT......................................................................................................... 3

    A.     Private class action claims violate the ADTPA...................................... 3

    B.     The proposed Amended Settlement Agreement (Doc. 181-2) is problematic for

           Arkansas consumers in other respects.................................................... 9

III. CONCLUSION ................................................................................................. 17

## Table of Authorities

Cases

*Adeli v. Silverstar Automotive, Inc.*, 2018 WL 4374194 (W.D. Ark. Sept. 13, 2018) ................. 5

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) . 6

*California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014) ........................................... 8, 9

*Cato v. Craighead Co. Cir. Ct.*, 2009 Ark. 334, 322 S.W.3d 484 ............................................. 6

*Chapman v. Tristar Prods. Inc.*, 940 F.3d 299 (6th Cir. 2019) ................................................ 8, 9

*Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655 (S.D. Miss. 2007) ........................................ 7

*Crain Family Holdings, LLC v. Ford Motor Company*, 2021 Ark. App. 361, 635 S.W.3d 346  . 6

*Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (2022) ................................................ 7

*EEOC v. JBS USA, LLC*, 940 F.Supp.2d 949 (D. Neb. 2013); ................................................ 8, 9

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ........................................................................ 5, 7

*Flint Water Cases*, 571 F. Supp. 3d 746 (E.D. Mich. 2021) ...................................................... 13

*Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016) .................................. 11

*Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977 (10th Cir. 2010) ................................ 8

*Gascho v. Global Fitness Holdings, LLC*, 833 F.3d 269 (6th Cir. 2016) ................................... 11

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 2014 WL 12652323 (S.D. N.Y. Sept. 29, 2014) ............. 8, 9

*In re Dial Complete Mktg. & Sales Pract. Litig.,* 312 F.R.D. 36 (D. N.H. 2015) ........................ 8

*In re Facebook Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767 (N.D. Cal. 2019). 8, 9

*In re Ford Motor Co. F-150 and Ranger Truck Fuel Econ. Mktg. and Sales Practs. Litig.*, 2022

    WL 551221 (E.D. Mich. Feb. 23, 2022) .................................................................. 8

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,

    497 F.3d 615 (6th Cir. 2007) ......................................................................... 13

ii

*Jeffus v. Ovation Health Systems, Inc.*, 2018 WL 11422059 (W.D. Ark. Sept. 17, 2018) ........... 5

*Kempf v. Lumber Liquidators*, 2017 WL 4288903 (W.D. Ky. Sept. 27, 2017) .......................... 8

*Linneman v. Vita-Mix Corp.* 970 F.3d 621, 628 (6th Cir. 2020).......................................... 10, 11

*Machesney v. Lar-Bev of Howell, Inc.*, 2017 WL 2437207 (E.D. Mich. June 6, 2017) ............. 10

*McKinney v. Bayer Corp.*, 744 F. Supp.2d 733 (N.D. Ohio 2010) ............................................... 7

*Mendoza v. WIS International, Inc.*, 2016 Ark. 157, 490 S.W.3d 298 ....................................... 6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006)................................. 1

*Mounce v. CHSPSC, LLC*,  2017 WL 4392048 (W.D. Ark. Sept. 29, 2017)............................... 5

*Murphy v. Gospel for Asia, Inc.* 327 F.R.D. 227 (W.D. Ark. 2018) ........................................... 5

*Ochoa v. Zeroo Gravity Games, LLC.*, 2023 WL 4291650 Slip Op. (C.D. Cal. May 24, 2023).. 5

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010)
.................................................................................... ………….5, 7, 8, 17

*Simpson v. Calvary SPV I, LLC*, 2014 Ark. 363, 440 S.W. 3d 335 .............................................. 6

*Stalvey v. Am. Bank Holdings, Inc.*, 2013 WL 6019320 (D. S.C. Nov. 13, 2013)....................... 8

*State of Ark. v. Family Dollar Stores, Inc.*, Case No. 60CV-22-2725, Pulaski Cnty. Circ. Ct. (Apr.
28, 2022) ......................................................................................................... 16, 17

*United States v. Cmty. Health Sys., Inc.*, 666 F. App'x 410 (6th Cir. 2016) .............................. 17

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (2008)........................................ 6

*Whitlock v. FSL Mgmt., LLC,* 843 F. 3d. 1084 (6th Cir. 2016)........................................... 5, 6, 8

Statutes

15 U.S.C. § 77a Private Securities Litigation Reform Act of 1995 ............................................... 1

15 U.S.C. § 78aa Securities Litigation Uniform Standards Act of 1998 ...................................... 1

28 U.S.C. § 2071-2077 Rules Enabling Act............................................................................... 1, 5

Ala. Code § 8-19-10 ......................................................................................... 11

Ark. Code Ann. § 4-88-101 *et seq.* ............................................................. *passim*

La. Rev. Stat. § 51:1401 *et seq.* ....................................................................... 11

Tenn. Code Ann. §§ 47-18-101 *et seq.* ............................................................. 6, 11, 12

Other Authorities

17A Am. Jur. 2d *Contracts* ............................................................................... 17

17A C.J.S. *Contracts* ........................................................................................ 16

Arkansas Economic Development Institute, *2020 Census Demographic and Housing Characteristics* ...................................................................................... 12

*Deceptively Simple: The Arkansas Deceptive Trade Practices Act,* Margaret Rushing, 71 Ark. L. Rev. 1031 (2019) ............................................................................... 3

*Litigation Management Handbook*, 2022-2023 ed., Thomson Reuters (2022).......................... 16

*Managing Class Action Litigation:  A Pocket Guide for Judges,* Barbara J. Rothstein and Thomas E. Willging, Federal Judicial Center (3d ed. 2010) ............................................... 10

Manual for Complex Litigation, Fourth Ed., Federal Judicial Center ......................................... 9

Tennessee Practice Series Contract Law and Practice ................................................................ 16

Rules

Fed. R. Civ. P. 23 ........................................................................................... *passim*

New York Civil Practice Rule § 901(b) ........................................................... 7

# I. INTRODUCTION

Private class actions, whether litigated or settled, are contrary to the Arkansas Deceptive Trade Practices Act (ADTPA). Ark. Code Ann. § 4-88-101 *et seq.* No state or federal court has held otherwise. A private plaintiff may not, in a representative capacity, usurp the sovereign authority vested in the Arkansas Attorney General to act on behalf of all Arkansas's consumers or release the rights of individual consumers. To be clear, the Arkansas legislature defined the substantive rights of Arkansans with ascertainable losses, § 4-88-101(f)(1)(A), and then affirmatively prohibited private class actions in the very next subparagraph, § 4-88-101(f)(1)(A). Interpreting Fed. R. Civ. P. 23 to override the Arkansas state legislature's prohibition would transform the nature and scope of a right merely by pleading in federal court. Inevitably, this invites into the federal courthouse the abusive consumer class action litigation practices that Arkansas sought to curtail in its state courts. Because federal substantive law allows private class action prohibitions, including expressly limiting certain state law class action claims,[1] without offending the Federal Rules Enabling Act, 28 U.S.C. § 2071-2077, it is difficult to see why, as a matter of comity, the federal court should ignore Arkansas's class action prohibition. To expeditiously achieve Arkansas's desired end, the exclusion of ADTPA claims from this proposed settlement, the Court could either grant Defendants' pending Motion to Dismiss to the extent of those claims or clarify and limit the language of the settlement as requested by the State in Exhibit

---

[1] *See* Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb(f)(1)(A) (enacted to prevent certain state private securities class action lawsuits alleging fraud from being used to frustrate the objective of the Private Securities Litigation Reform Act of 1995 (Reform Act) to reduce abusive litigation). *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) (discussing how the Reform Act's limitations on recoverable damages and attorneys' fees, sanctions for frivolous litigation, and heighted pleading requirements for federal securities claims had the unintended consequence of shifting securities litigation to state courts to avoid the same).

A.[2]  Because Arkansas is only one of the states with class action prohibitions whose claims are purportedly resolved by the proposed settlement, as a practical matter it would make little sense to carve out only the ADTPA claims and then subject the parties to possible additional objections to the settlement. While recognizing that the exclusion of these claims would send the parties back to the negotiation table is somewhat inefficient, it is far more expedient than lengthy delays brought on by appeals or any subsequent, and entirely foreseeable, objections to the proposed settlement.

Contrary to Plaintiffs' contention that the State's intervention has no practical effect on the proposed settlement because restitution is the same under both the ADTPA and the common law claims, the proposed settlement's limitation of gift cards to one per household conflicts with the ADTPA's restitution for each *consumer*, not household, for each ascertainable loss "together with other damages sustained."  (Pls.' Opp. Br, Doc. 172 at p. 8; Am. Settlement Agmt., Doc. 181-2 at p. 4); Ark. Code Ann. § 4-88-113(a)(2)(A)). Thus, as a practical matter, preliminary approval of the proposed settlement leaves a substantial number of Arkansas consumers with unsettled claims and presents additional liability for Family Dollar not only in Arkansas, but in other affected states.

If the claims brought under the ADTPA are not dismissed and if the Court allows the parties to "settle" the claims in the manner described in the proposed Amended Settlement Agreement, the State is still bound to carry out its statutorily-prescribed duty to represent the State's consumers excluded from restitution by the proposed settlement.  ("There is created within the office of Attorney General a Consumer Protection Division." "The Division shall represent

_____

[2] Doubtless there are other possible avenues to reach the same result.

2

and protect the state, its subdivisions, the legitimate business community, and the general public."
Ark. Code Ann. § 4-88-105(a), (c).)

## II. ARGUMENT

A.   Private class action claims violate the ADTPA.

The Court has not yet ruled on Defendants' Motion to Dismiss as to consumer class action claims. In Defendants' own words, "The Court should dismiss Plaintiffs' attempt to assert class claims under the Alabama, Arkansas, Louisiana, Mississippi, and Tennessee consumer protection statutes because each of those statutes contains a substantive legal prohibition on pursuing class-wide relief."  Defs. Mot. Dismiss at ¶ 3 (emphasis added).  In their Memorandum of Law in Support of the Motion to Dismiss, Defendants discuss more fully the five states' "substantive prohibitions on seeking relief on behalf of a putative class." *Id.* at § III.  Arkansas agrees with Defendants' characterization of class action claims as a "fatal defect," *id.* at fn. 9, and Defendants' conclusion that "[t]hese state law prohibitions on class-action litigation apply here." *Id*. at § III.

Class actions are quite simply prohibited by the ADTPA. Margaret Rushing, *Deceptively Simple: The Arkansas Deceptive Trade Practices Act*, 71 Ark. L. Rev. 1031, 1031 (2019)*.* This prohibition was added to the ADTPA by Act 986 of 2017 together with provisions that require private plaintiffs to prove "an actual financial loss . . . proximately caused by the offense or violation" of the defendant." Ark. Code Ann. § 4-88-113(f)(2). The Arkansas Attorney General has been charged with protecting every consumer, Ark. Code Ann. § 4-88-104, and the State, having cause to believe that Defendants have violated the Act, has brought a claim against Defendants for those violations in its own court.  Plaintiffs have mischaracterized the legislative history of the 207 bill that amended the ADTPA to bn class actions. During the discussion of the amendment in the House Insurance and Commerce Committee Meeting on March 17, 2017, at

8:30 a.m.[3], one of House Bill 1742's sponsors, Rep. Michelle Gray, was asked if there was a floor or ceiling on the amount of damage that might allow a consumer to enter into a class action.

> Rep. Gray:  "[W]e did not put any kind of a floor or a ceiling on this as to whether or not they could. Right now they would have to go through the Attorney General's Office and I did verify that—some of the questions were whether or not the Attorney General could seek restitution and there are *multiple* cases in where [*sic*] our Attorney General has sought restitution and we have funds available for that. So it's—they could not do it privately but it can be done through the Attorney General's Office.
>
> Rep. Austin McCollum:  "Can you elaborate more on . . . representative versus individual capacity?"
>
> Rep. Gray:  "Yes. Right now, it's essentially called 'representative capacity' under the current statute, and that essentially says 'representative' as in 'representing an entire class of people.' So our intent with the bill was to say that you could no longer be representative under deceptive trade but you could bring a claim individually."

This is clearly a substantive, rather than procedural, change to the law. Plaintiffs' argument that the statute is irrelevant and fails the *Shady Grove* test is without merit; this state law covers all ADTPA class "actions" by its plain language—whether the action is at the trial stage or the settlement stage—and retains its teeth under the *Erie* doctrine. *Shady Grove*

---

[3] State of Arkansas House of Representatives "Watch Live" website. No direct link to the video is provided, but it can be located by searching for March 17, 2017, selecting the correct committee meeting, and clicking on the provided link. Discussion of the amendment begins at time stamp 8:52:28 a.m. https://www.arkansashouse.org/watch-live (last accessed Sept. 6, 2023.)

*Orthopedic Associates, P.A. v. Allstate Insurance Co.,* 559 U.S. 393 (2010), *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The Arkansas legislature sought to "get better control on the class actions" because "class action trial lawyers were walking away with large amounts of money while consumers were simply getting coupons in the mail." Rushing at 1037-38. Few courts have even been positioned to consider the issue. In *Jeffus v. Ovation Health Systems, Inc.*, 2018 WL 11422059 (W.D. Ark. Sept. 7, 2018) the Court stated that "Plaintiffs may not simply rely on general allegation of harm to residents [of a nursing home] to state a plausible ADTPA claim." In *Adeli v. Silverstar Automotive, Inc.*, 2018 WL 4374194 (W.D. Ark. 2018), at *3, *5, in addressing a choice of law question, Judge P.K. Holmes found that Arkansas's consumer protection claims are substantively tort-based and that "Arkansas has an interest in policing its businesses' consumer-related practices." In *Murphy v. Gospel for Asia, Inc.,* 327 F.R.D. 227 (W.D. Ark. 2018), Judge Brooks wrote that "amendments to the ADTPA … have the effect of prohibiting individuals from bringing class action lawsuits for violations of anything other than provisions of the Arkansas Constitution." *See also*, *Mounce v. CHSPSC, LLC*, 2017 WL 4392048 (W.D. Ark. 2017) (unreported) (Arkansas's class action ban should not apply retroactively); *Ochoa v. Zeroo Gravity Games, LLC.*, No. CV 22-5896-GW-ASX 2023 WL4291650, Slip Op. at 9-10 (C.D. Cal. 2023) (ADTPA bars plaintiffs from asserting private class actions and consumer protection claims should be governed by the laws of the jurisdiction in which the transaction took place.).

When a federal court is required to apply state law, it is required to do so by following the controlling decisions of the state's highest court, yet Arkansas's Supreme Court has not spoken on this issue. *E.g.*, *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016) (Kentucky Wage and Hour Act prohibition on class- action litigation is substantive for purposes of the Rules

Enabling Act). Arkansas courts, when considering the meaning and effect of a statute, give "words their ordinary and usually accepted meaning in common language." *Simpson v. Calvary SPV I, LLC*, 2014 Ark. 363, 337,*4, 440 S.W. 3d 335, 338.  When reviewing an act in its entirety, an Arkansas court may consider the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other "appropriate means that throw light on the subject [that] can be used to construe legislative intent." *Crain Family Holdings, LLC v. Ford Motor Company*, 2021 Ark. App. 361, 6, 635 S.W.3d 346, 349.  Law is substantive when it creates, defines, and regulates the rights, duties, and powers of the parties, while procedural law prescribes the steps for having a right or duty judicially enforced.  *E.g., Mendoza v. WIS International, Inc.*, 2016 Ark. 157, 5, 490 S.W.3d 298, 301; *Cato v. Craighead Co. Cir. Ct.*, 2009 Ark. 334, 8-10, 322 S.W.3d 484, 489-90 (state statute exempting organized militia members from any civil process during military duty was substantive and rooted in public policy best left to the legislature).

While the Sixth Circuit's analysis in *Whitlock* concerns whether defendants could decertify a class based upon a post-settlement class action ban, in *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (2008), the Tennessee Supreme Court upheld a state class action ban in Tennessee's Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq.*, noting that the Tennessee Attorney General's power to bring actions on behalf of consumers is "akin to a class action." *Cf. American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014).  Mississippi's Consumer Protection Act ban on class actions was upheld because its limitation to a discrete substantive area of law manifested an intent to influence substantive outcomes and absent the federal court's application of the state's substantive policy choice, parties in diversity could thumb their noses at the state law.  *Cole v. Chevron USA, Inc.*,

554 F.Supp.2d 655 (S.D. Miss. 2007).   Arkansas's, and the other affected states' consumer protection statutes, are *substantive* law trather than procedural. The legislative history favors an interpretation that the Arkansas legislature intended to influence the substantive outcome of these types of claims by vesting them only with the Attorney General.

*Shady Grove* is inapplicable and the class action ban applies with equal force in federal court under *Erie*.   What distinguishes *Shady Grove*, where a private party sought class certification in federal court under a New York Statute while New York Civil Practice Rule § 901(b) banned class actions for penalties, from the State's argument is that Arkansas affirmatively vests class action power in its Attorney General.   *Shady Grove* also does not address the absurd result that Arkansas consumers' rights may be determined by a distant court sitting in diversity while those same consumers are barred from class actions in state court. Blindly applying *Shady Grove's* argument that Federal Rule 23 only regulates the process for enforcing those rights and ignores the abuses Arkansas sought to be avoided by vesting class action power in a particular government agency or elected official.   The Ohio Consumer Protection Act's similar limitation on class actions was found to be substantive, and thus, not preempted. *McKinney v. Bayer Corp.*, 744 F. Supp.2d 733, 749 (N.D. Ohio 2010). Moreover, and significantly, *Shady Grove* was decided before *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (2022), which resoundingly returned to each State the power to regulate its citizens' health and welfare. Courts cannot substitute their social and economic beliefs for the judgment of legislative bodies and respect for a legislature's judgment applies even when the laws at issue concern matters of great social significance and moral substance.   *Id.* at 2284. A broad reading of the Federal Rules Enabling Act does more than just change the courthouse in which a claim must be brought, it imposes a uniform rule that allows the States less freedom to regulate business, trade, and

commerce within its borders for the public good. By limiting consumer class actions to the Attorney General, the statute protects legitimate businesses from frivolous class action claims in Arkansas, and thus, Arkansas's long-term economic interests. At most, *Shady Grove*'s fractured plurality opinion can be read to put forth the uncontroversial opinion that Rule 23 displaces conflicting state procedural provisions. *See Whitlock*, 843 F. 3d at 1091 n.2 (holding that Justice Stevens's opinion that where state procedural rules function as part of the state's definition of substantive rights and remedies, the rules may be applied in federal court*). See*, *e.g.*, *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010); *In re Ford*, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022); *Kempf v. Lumber Liquidators*, No. 16-cv-0492, 2017 WL 4288903 (W.D. Ky. Sept. 27, 2017); *Stalvey v. Am. Bank Holdings, Inc.*, 2013 WL 6019320, at *3-5 (D. S.C. Nov. 13, 2013).

Cases cited in opposition to the State's class action ban as substantive are unavailing. *In re Dial Complete Mktg. & Sales Pract. Litig.*, 312 F.R.D. 36 (D. N.H. 2015) did not address the authority of private parties to settle ADTPA claims; rather, several State Attorneys General and the United States objected to the illusory value of the settlement and injunctive relief to consumers when compared with class counsels' compensation pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.*, not the authority of the parties or court to settle their purported claims. *See Br. Of Attys.' Gen.* at ECF Doc. No. 254, 1-4, 8 (D. N.H. Case No. 1:11-md-02263) (Plaintiffs' counsel received $4.4 million while each consumer was provided $0.27 per package of soap in restitution). Notably, a court's role in reviewing a proposed class action settlement is not a determination on the merits of any particular claim, but whether a proposed settlement is fair, reasonable, and adequate under Rule 23. Neither are *In re Facebook*; *California v. IntelliGender, LLC*; *EEOC v. JBS USA, LLC; Chapman v. Tristar Prods. Inc.,*; nor *In re Am. Int'l Grp., Inc. Sec. Litig.* exactly on point in that California, New Mexico, Nebraska, Ohio, and New

York, respectively, do not bar consumer class actions. *In re Facebook Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767 (N.D. Cal. 2019); *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014); *EEOC v. JBS USA, LLC*, 940 F.Supp. 2d 949 (D. Neb. 2013); *Chapman v. Tristar Prods. Inc.*, 940 F. 3d 299 (6th Cir. 2019); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2014 WL 12652323 (S.D. N.Y. 2014).

B.  The proposed Amended Settlement Agreement (Doc. 181-2) is problematic for Arkansas consumers in other respects.

The Attorney General's primary objection to the proposed settlement is that the legal and practical effect of the overbroad and vague release language is the release, or forfeiture, of all ADTPA claims for restitution for every Arkansas consumer. Nonetheless, it bears noting that there are a number of other potential issues that warrant consideration by this Court. The purported settlement is on a claims-made basis that restricts eligibility to one per household, requires a cumbersome claims process that requires that consumers provide Defendants with a substantial amount of personally identifying information with no promise as to how that information will be used beyond the mailing of the gift cards, and Family Dollar is only out its actual costs of the items purchased by consumers at retail prices through the redemption of a gift card.[4] The value of every unused gift card inures to the benefit of Defendants and Defendants

---

[4] "There are a number of recurring potential abuses in a class action litigation that judges should be wary of as they review proposed settlements," which include "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits, particularly if the settlement provides that the unclaimed portions of the fund will revert to the defendants." *Manual for Complex Litigation, Fourth Ed.*, § 21.61, Judicial Role in Reviewing a Proposed Class Action Settlement, at 374-75.

"Restrictions on claims/reversions of unclaimed funds to defendant" is one of the enumerated "hot button indicators" described in the guide published by the Federal Judicial Center. That publication explains that "[s]ome settlement terms show their potential unfairness on their face; we call them 'hot button indicators.'" Barbara J. Rothstein and Thomas E. Willging, Federal

have agreed to a "clear sailing" provision of an award of up to $10,500,000 in attorneys' fees and expenses without ever determining the number of consumers expected to redeem any amount of the gift cards, the average percentage of the total value of the gift cards that will actually be redeemed, or consideration of the discount between the retail value to consumers and Family Dollar's actual costs.  The court may consider whether a claim process is even necessary for every single consumer when Family Dollar's loyalty program already provides a way to link coupons to their loyalty program membership. *See also* Barbara J. Rothstein and Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation:  A Pocket Guide for Judges*, 17- 23, 30 (3d ed. 2010). The Sixth Circuit holds that "[a] district court will often abuse its discretion if it fails to consider the redemption rate as part of [attorneys' fees] analysis." *Linneman v. Vita-Mix Corp.* 970 F.3d 621, 628 (6th Cir. 2020).  Though CAFA does not require districts to calculate

---

Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, 17-23 (3d ed. 2010).  "Limits on the amount of recovery per claimant, strict eligibility criteria for claimants, or other procedural or substantive obstacles to honoring claims from class members may dramatically reduce the apparent value of a settlement. Coupled with a provision that any unclaimed funds revert to the defendant at the end of the claims period (a provision that is generally disfavored, as discussed in the next paragraph), restrictions on eligibility are likely to substantially diminish the overall value of a settlement to the class. The addition of a "clear sailing" agreement (i.e., a stipulation that attorney fees based on the inflated settlement figure will not be contested) to an agreement with a reversion clause *adds decibels to the alarms set off by the reversion clause. Some courts treat the combination as creating a presumption of unfairness.*" "*A reversion clause creates perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to use the artificially inflated **settlement** amount as a basis for attorney fees.* Instead of approving a settlement with a reversion clause, consider encouraging the parties to use an alternative approach, such as distributing the entire settlement fund to the class members who file claims. Prorating the fund in that way avoids the possibility on unclaimed funds and is a standard practice in securities class settlements ..." "To align plaintiff's counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, *considering linking the award of attorney fees to the value of the funds distributed to the class* or the coupons redeemed by the class. *Machesney v. Lar-Bev of Howell, Inc.*, No. 10-10085, 2017 WL 2437207, at *7–8 (E.D. Mich. June 6, 2017).

attorneys' fees based on the value of the settlement, the "most critical factor" when it comes to the reasonableness of an award is the degree of success obtained. *Id.* at 633. Assessing the success obtained requires a district court to "carefully consider the value of the settlement" considering the "crucial role" of redemption rates. *Id.* at 634. Noticeably absent from the proposed Agreement is any mention, let alone calculation, of the value of the settlement to the class members or anticipated redemption rate. *See Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016) (redemption rate of 0.045% for coupons); *Gascho v. Global Fitness Holdings, LLC*, 833 F.3d 269 (6th Cir. 2016) (discussing calculation of attorneys' fees on the value to consumers).

However, even without the State's intervention, the limitation of restitution to one gift card per household rather than per consumer leaves Defendants exposed to a significant number of additional claims in Arkansas and other states from the consumers excluded from the proposed settlement. The Alabama Deceptive Trade Practices Act similarly bans consumer class actions and provides for liability to "each consumer." Ala. Code § 8-19-10(f), (a). The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. § 51:1401 *et seq.* prohibits representative actions for actual damages and provides relief for "any person who suffers any ascertainable loss." *See* La. Rev. Stat. § 51:1408(A). *See* Miss. Code Ann. § 75-24-15(1), (4) ("any person…may bring an action…" but "every private action must be maintained in the name of and for the sole use and benefit of the individual person."); Tenn. Code Ann. § 47-18-109(a)(1) ("Any person who suffers an ascertainable loss … may bring an action individually to recover actual damages" and a consumer's acceptance of any written settlement offer does not abate any proceeding by the Tennessee Attorney General to recover on behalf of "any person who has

suffered any ascertainable loss."   Tenn. Code Ann. § 47-18-108(b)(1)(emphasis added throughout).

The difference in the number of citizens, or potential consumers, versus the number of households, is substantial. The 2020 population in Arkansas was 3,011,524, whereas the number of households was only 1,199,395.[5] Even narrowing the age range of the average Family Dollar consumer to persons fifteen (15) years old and up, the population of Arkansans fifteen and older was 2,433,318[6] in 2020, slightly more than *twice* the number of households (2,433,318 consumers fifteen and older = 2.029 times 1,199,395 households). The proposed Settlement Agreement's provision of one gift card per household therefore eliminates *more than half* of the potential consumers, even assuming that no one under age 15 shops at Family Dollar.

The proposed Settlement Agreement simultaneously releases the rights of all of the absent class members covered by the ADTPA and fails to provide any restitution to half of those in exchange for a complete release of claims.  Assuming, *arguendo*, that the population distributions of Alabama, Louisiana, Mississippi, and Tennessee are similar to that of Arkansas, the parties have come to an agreement in principle that purports to provide restitution to only half of the putative class members upon whose behalf the purported class actions were brought. By no measure can this settlement be considered "fair."

The Sixth Circuit relies upon seven (7) factors in determining whether a proposed class action settlement meets Fed. R. Civ. P. 23(e)(2)'s requirement that the proposal be "fair, reasonable, and adequate." These factors are "(1) the risk of fraud or collusion; (2) the complexity,

---

[5]Arkansas Economic Development Institute, *2020 Census Demographic and Housing Characteristics*, "Households by Type and Presence of Own Children Under 18 Years" and "Exploring Age Groups in the 2020 Census Tables: States," at https://arstatedatacenter.youraedi.com/census-2020/ (last accessed Sept. 6, 2023).
[6] *Id.*, "Sex by Age for Selected Age Categories."

expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."[7] The final three of these factors apply directly to the question of the provision of gift cards to half of the putative class members; the other factors are of course essential to evaluating the fairness of the proposed Settlement as a whole, but as the State has not been privy to much of the proceedings, and because the litigation proceedings have been paused and the amount of discovery devoted to class certification versus the questions being litigated has not been clarified by the parties, the State is not in the most informed position to speculate on those factors.

*The opinions of class counsel and class representatives*. Class counsel opines that the Settlement is fair in the Brief in Support of the Proposed Settlement Agreement. The opinions of class representatives are necessarily opaque: eight (8) of the class representatives will receive "Service Award[s. . .] not to exceed $5,000" and the remaining two representatives "Service Awards" up to $2,000. While the class representatives did sign the proposed Agreement, Doc. 156-1 at 35-36, their true opinions regarding the fairness of $25 gift cards being doled out to approximately half the consumers they allege to represent is doubtless colored by the fact that they are themselves receiving two hundred (200) times the amount of compensation to other class members, compensation in the form of actual money that does not have to be spent at Family Dollar.

---

[7] *In re Flint Water Cases*, 571 F. Supp. 3d 746, 769 (E.D. Mich. 2021), citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007). Fn. 20 to *In re Flint Water Cases* clarifies that while the factors established in *Int'l Union* predated Fed. R. Civ. P. 23(e)'s 2018 amendment that codified many of these factors, the Advisory Committee's note on the amendment clarified that it was not intended to displace the various lists of factors being used by courts, and the *In re Flint Water* court chose to follow both sets of factors.

The reaction of absent class members remains to be revealed, since only after the Notice period begins will Plaintiffs, Defendants, and the Attorneys General or other officials of the six affected states be made aware of the opinions of the consumers who are or are not deemed eligible to receive a gift card (because the proposed Settlement Agreement requires that an applicant for a gift card "provide an objective indication that [he or she] lives in a <u>trade area</u> serviced by an Affected . . . Store", ¶ 8.4(c), and since Family Dollar has not published what it considers to be the boundaries of these "trade areas," applicants will not know whether or not they qualify for compensation until their applications are processed by the claims administrator). Claimants also may or may not know if their application for restitution will be rejected on the basis that someone else at that address ("single dwelling unit"), ¶ 1(1.20)—Family Dollar's definition of "Household"—has already submitted a claim form.

Most egregiously, the total amount of the settlement fund is never disclosed, making *anyone's* ability to evaluate the fundamental fairness of the proposed Settlement Agreement, whether an absent class member, a State, this or another Court, impossible. This is not a normal practice for MDL settlement agreements, and the absence of that figure is troubling. The proposed Class Settlement and Release indicate that the number of the $25 gift cards is finite—that is, the company and Plaintiffs have already decided exactly how many households will be awarded restitution. *See id.* at ¶ 1 (1.36) ("The website is to remain active until . . . sixty (60) days after <u>all Family Dollar Gift Cards</u> are distributed") (emphasis added). Tellingly, neither the text of the settlement nor the Notice ever actually states that all eligible applicants—households in Family Dollar "service areas" who correctly complete a Claim Form and submit it timely with all required information, within the sixty (60)-day window after the Notice period begins, will receive $25 gift cards.

14

The fact that the parties have already calculated Plaintiffs' attorneys' fees of precisely ten million dollars ($10,000,000) with costs of five hundred thousand dollars ($500,000) further indicates that the fees have been negotiated as part of the overall value of the settlement fund. Were Plaintiffs' Counsel to have used the lodestar method, it would have been next to impossible to calculate a perfectly round figure, especially before work on the proposed Settlement Agreement had even been completed.

*The public interest*

The final factor in the Sixth Circuit's fairness framework is whether the settlement serves the public interest. Because of the proposed Settlement Agreement's exclusion of, conservatively estimated, half of Family Dollar's Arkansas consumers, if the parties do not carve out the ADTPA claims in their entirety, the State will have no choice but to pursue restitution for the remaining uncompensated consumers in its ongoing state court litigation. This bifurcation of consumer restitution would extend litigation at considerable and unnecessary time and expense to all parties, both courts, the State of Arkansas, and any of the other four affected states with class action bans in their consumer protection statutes—Alabama, Louisiana, Mississippi, and Tennessee—which could similarly object to the settlement at any time in order to enforce their own substantive legal provisions barring consumer protection class actions and their respective sovereignty in bringing claims on behalf of classes of injured consumers.

As discussed above, excluding a group of consumers from the purported class settlement is both legally and economically inefficient.  The single "bespoke provision"[8] in the Recitals of the proposed Settlement Agreement that states that it "expressly excludes and does not release

---

[8] Pl. Opp. at 8.

any" of the State's claims against Defendants in its state court action,[9,10] as the State has argued

before,[11] is dwarfed by the magnitude of the "off-the-shelf" language elsewhere[12] as well as that

language's stark contradictions of ¶ 2.16. Nowhere in the law governing contract interpretation

are parties to a contract instructed to distinguish between "bespoke" recitals and "off-the-shelf"

provisions.[13]

 Crucially, the paragraph regarding Arkansas's litigation is in the *Recitals* of the proposed

Settlement Agreement.  <u>Recitals are not binding settlement terms</u>; they are used to define the

scope of an agreement, the background, and the parties. "A . . . common recital is that stating the

contractual intent of the parties in entering into an agreement. . . . Such recitals are useful in later

disputes to define the scope of res judicata to give to a settlement that has been reduced to a

judgment, as well as the scope of releases contained in such an agreement." [14] The Sixth Circuit,

in a review of a lower court's interpretation of a settlement agreement regarding fee disputes in

four federal cases that had been consolidated for the district court's resolution, held that recitals'

purpose is not to serve as binding "operative portions,"[15] but to establish background and parties'

motives and provide context for interpreting *ambiguous* terms in the contract.[16] By relegating the

---

[9] *State of Ark. v. Family Dollar Stores, Inc.*, Case No. 60CV-22-2725, Pulaski Cnty. Circ. Ct. (Apr. 28, 2022)

[10] Dkt. 156-1, ¶ 2.16

[11] Dkt. 167-1 at 11-13

[12] Pl. Opp. at 7-8; referring to Doc. No. 156-1, ¶¶ 6.2, 6.4, 6.5

[13] *E.g.*, Tennessee Practice Series Contract Law and Practice – Interpretation, § 8:20(8): "Contracts are construed as a whole; the words are not viewed in isolation"; § 8:20(12): "Contract terms should be construed harmoniously to give effect to all provisions. . . and to avoid creating internal conflicts[.]"

[14] Jerry M. Custis, *Litigation Management Handbook* § 10:74: "Terms to include in settlement agreements—Necessary and optional terms—Recitals" (2022).

[15] 17A C.J.S. *Contracts* § 403, "Application of contract construction rules as dependent on ambiguity."

[16] "It is true that recitals "generally do not create binding obligations." 17A C.J.S. *Contracts* § 403. But recitals can establish "the background of a contract, that is, the purposes and motives of

parties' ostensible carveout of the State's ADTPA claims to the Recitals, a court could find that the mention of *State v. Family Dollar* was merely an acknowledgment that the action was ongoing but unrelated to the MDL and that the operative release language, not the Recital, was binding.

### III. CONCLUSION

The State is not asking to be a party to the proposed Amended Settlement Agreement, it is petitioning for the parties to carve out all claims made under the ADTPA or dismiss those claims. Arkansas will continue to prosecute its case and protect each Arkansas consumer in its own case. While the Arkansas Supreme Court has not had a chance to consider the ADTPA's class action ban, the legislative history is persuasive and *Shady Grove* is distinguishable. The sooner the ADTPA claims are dismissed, the more expeditiously the parties can resolve their respective claims efficiently.

Dated: September 8, 2023

<div style="margin-left: 3em;">

Respectfully Submitted,

TIM GRIFFIN
Arkansas Attorney General

/s/Kate Donoven
Kate Donoven Ark. Bar No. 98189
Senior Assistant Attorney General
Rachel Kluender Ark. Bar No. 2016164
Assistant Attorney General

</div>

---

the parties." 17A Am. Jur. 2d *Contracts* § 373. They also "may have a material influence in construing the contract and determining the intent of the parties," for if an operative section of a contract is ambiguous, "the recitals govern the construction." Id.; see also 17A C.J.S. *Contracts* § 403 (observing that although recitals "do not control over the express provisions of a contract, they may be read in conjunction with the contract's operative portions to ascertain the parties' intention, where the operative clauses are ambiguous" (footnote omitted)). *United States v. Cmty. Health Sys., Inc.*, 666 F. App'x 410, 417 (6th Cir. 2016).

323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-8114
Fax: (501) 682-8118
Email: kate.donoven@arkansasag.gov
        rachel.kluender@arkansasag.gov

*Attorneys for Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I electronically filed the above with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

/s/ Kate Donoven

18