IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE: Family Dollar Stores, Inc., Pest Infestation Litigation )<br>)<br>)<br>)<br>)<br>)<br>This Document Relates to: )<br>ALL CASES ) | No. 2:22-md-3032-SHL-tmp<br>(MDL Docket No. 3032) |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT**

Before the Court are Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Service Awards ("Motion for Attorneys' Fees") (ECF No. 194), filed January 4, 2024, and Plaintiffs' Unopposed Motion for Final Approval of Proposed Settlement and Supplement to Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Service Awards ("Motion for Final Approval") (ECF No. 197), filed February 8, 2024. Defendants do not oppose either motion. For the following reasons, the Motion for Final Approval is **GRANTED,** and the Motion for Attorneys' Fees is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Plaintiffs' Motion for Attorneys' Fees is **DENIED WITHOUT PREJUDICE** given its lack of compliance with the Court's Local Rules.

## BACKGROUND

This case involves allegations that Defendants Family Dollar Stores of Tennessee, LLC; Family Dollar Stores of Arkansas, LLC; Family Dollar Stores of Alabama, LLC; Family Dollar Stores of Louisiana, LLC; Family Dollar Stores of Mississippi, LLC; Family Dollar Stores of Missouri, LLC; Family Dollar Services, LLC; Family Dollar, Inc.; Family Dollar Stores, Inc.;

Dollar Tree, Inc.; and Dollar Tree Stores, Inc. (collectively "Family Dollar"), deceptively, negligently, recklessly, and/or intentionally sold products that were contaminated by a rodent infestation in stores throughout Mississippi, Arkansas, Louisiana, Alabama, Missouri, and Tennessee. (ECF No. 54 at PageID 347.) Plaintiffs Dondrea Brown, Muriel Vanessa Brown, Vinnie L. Smith, Julian A. Graves, Reginald and Sonya Fields, Taylor Lorimer, Martha "Keisha" Lacy, Sheena Bibbs, Jerome Whitney, Tina Bishop, Sonya Mull, and Christine Robinson (collectively "Plaintiffs") brought this case as a class of customers of Family Dollar. (Id.)

Family Dollar is a value chain store that sells groceries and household goods at discounted prices. (Id. at PageID 347–48.) Family Dollar owns and operates more than 8,000 stores and eleven distribution centers, including a Family Dollar Distribution Center in West Memphis, Arkansas ("Distribution Center 202"). (ECF No. 167-1 at PageID 3256, 3331.) Distribution Center 202 distributed products to Family Dollar stores in eleven states, six of which had stores that were affected by the incidents that led to this litigation. (Id. at PageID 3256.) Eighty-five of these stores are located in Arkansas. (Id.)

In March 2021, the Arkansas Department of Health ("ADH") inspected Distribution Center 202 and reported seeing "significant rodent activity" in areas where human and pet food were stored. (Id. at PageID 3256–57.) The ADH notified the U.S. Food and Drug Administration ("FDA") in October 2021, prompting an FDA investigation. (Id. at PageID 3257.) On February 11, 2022, the FDA released a report that detailed a rodent infestation that compromised products stored inside Distribution Center 202. (ECF No. 54 at PageID 348, 416.) On February 18, 2022, the FDA issued a Safety Alert that directed consumers who had shopped in affected stores to discard certain products that had potentially been contaminated by rodents. (ECF No. 167-1 at PageID 3257.) The same day, Family Dollar temporarily closed 404 stores

and issued a voluntary recall of the FDA-regulated products sold in the affected stores. (Id. at PageID 3258.)

After learning of the rodent infestation, the Arkansas Attorney General ("AG") began an investigation into potential violations of Arkansas law, including the Arkansas Deceptive Trade Practices Act ("ADTPA"). (Id. at PageID 3259.) On April 28, 2022, the AG filed a lawsuit against Family Dollar in Arkansas state court ("Arkansas Case") asserting ADTPA claims and several common law claims. (Id.); Arkansas ex rel. Rutledge, Case No. 60CV-22-2725, Pulaski Cty. Cir. Ct. (Apr. 28, 2022). Through that lawsuit, Arkansas seeks actual and punitive damages, disgorgement, restitution, civil penalties, and injunctive relief against Family Dollar. (ECF No. 167-1 at PageID 3259.)

By June 2, 2022, thirteen lawsuits had been filed against Defendants in seven different federal jurisdictions. (Id. at PageID 3260.) That day, the United States Judicial Panel on Multidistrict Litigation concluded that the Western District of Tennessee was an appropriate transferee district for consolidated proceedings, resulting in the instant Multidistrict Litigation ("MDL"). (Id.) The Arkansas Case remained in state court, and thus was not transferred to the MDL. (Id.)

On August 12, 2022, Plaintiffs filed a Consolidated Complaint in the MDL. (ECF No. 54.) The Consolidated Complaint included claims for negligence, negligence per se, negligent failure to warn, breach of implied warranty, unjust enrichment, fraudulent concealment, failure to disclose, and violations of multiple Deceptive Trade Practice and Consumer Protection Acts.[1]

---

[1] The list includes Alabama Deceptive Trade Practice Act (Ala. Code §§ 8-19-1, et seq.); ADTPA (Ark. Code Ann. §§ 4-88-101, et seq.); Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. §§ 51:1401, et seq.); Mississippi Consumer Protection Act (Miss. Code Ann. §§ 75-24-1, et seq.); Missouri Merchandising Practices Act (Mo. Rev. Stat § 407.101, et seq.); and Tennessee Consumer Protection Act (Tenn. Code Ann. §§ 47-18-101, et seq.).

(Id.)  Defendants filed a Motion to Dismiss the Consolidated Complaint on September 26, 2022. (ECF No. 77.)

Plaintiffs filed an Amended Consolidated Complaint on October 17, 2022, containing additional exhibits and allegations.  (ECF No. 83 (sealed).)  Defendants filed a Motion to Dismiss Plaintiffs' Consolidated Amended Complaint on October 20, 2022.  (ECF No. 89.)  The Court held a hearing on that motion on December 20, 2022.[2]  (ECF No. 116.)

Before the filing of this lawsuit, Plaintiffs conducted "extensive investigation of the facts and circumstances related to the allegations in the Action."  (ECF No. 156-1 at PageID 3063.) Plaintiffs also undertook significant discovery efforts during the pendency of the case, including serving eighteen interrogatories, fifty-eight requests for admission, forty-six document requests and disclosing four expert witnesses.  (Id.)  Plaintiffs served numerous third-party subpoenas and issued Freedom of Information Act requests which resulted in the production of tens of thousands of pages of documents.  (Id.)  In late 2022, Plaintiffs and an expert inspected Distribution Center 202.  (Id.)  Defendants produced for review more than 24,000 pages of documents and disclosed six experts.  (Id.)  Plaintiffs produced more than 6,000 pages of documents.  (Id.)  Additionally, Defendants took, and Plaintiffs defended, seven Settlement Class Representatives depositions.  (Id.)

On November 9, 2022, the Parties engaged in a mediation session, but did not reach an agreement.  (Id. at PageID 3062.)  On April 18, 2023, the Parties engaged in a second mediation session.  (ECF No. 173 at PageID 3421.)  The Parties made significant progress at that

---

[2] This motion was still pending when the Court received the Parties' Notice of Settlement.

4

mediation, and the mediator prepared a proposal on April 20, 2023, asking the Parties to approve or reject it by April 28, 2023. (Id.) Plaintiffs' counsel requested and received two extensions of that deadline to discuss the proposed settlement terms with the Arkansas AG. (Id. at PageID 3421–22.) On May 3, 2023, the AG was provided a copy of the mediator's proposal, which included the material terms of the Settlement: an uncapped, "claims made" settlement providing $25.00 Family Dollar gift cards to all claimants who could attest that they shopped at a Family Dollar store serviced by Distribution Center 202 between January 1, 2020, and February 18, 2022. (Id. at PageID 3422.)

On May 5, 2023, the Parties accepted the mediator's proposal and began to prepare a long-form Settlement Agreement. (Id.) On May 8, 2023, the Parties shared a draft agreement with the AG, and, on May 30, 2023, they provided him with an updated draft. (Id.) On June 7, 2023, Arkansas requested that the Parties include a "carve out" from the release to exclude the Arkansas Case from the proposed MDL Settlement. (Id.) A few days later, Arkansas requested that the Parties remove a provision that would reserve Family Dollar's right to object to any attempted double recovery. (Id.) Family Dollar agreed to the carve out excluding the Arkansas Case, but refused to delete the reservation of rights against double recovery. (Id.)

On June 19, 2023, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Consolidated Class Action Settlement. (ECF No. 155.) The Settlement Agreement that accompanied the Motion included both the carve out and Family Dollar's reservation of rights, and stated, in relevant part:

> WHEREAS, this Settlement expressly excludes and does not release any claims made by the Arkansas Attorney General in *State of Arkansas, ex rel. Leslie Rutledge, Attorney General v. Family Dollar Stores, Inc.; Dollar Tree, Inc.; Family Dollar Services, LLC; and Family Dollar Stores of Arkansas, LLC*, Case No. 60CV-22-2725, Circuit Court of Pulaski County, Arkansas, Civil Division. However, Defendants reserve all rights to raise any and all defenses to the claims

5

      raised in that case, including that monetary relief would be inappropriate given the relief provided to consumers through this Settlement.

(ECF No. 156-1 at PageID 3065.)[3]

On July 18, 2023, Arkansas filed a Motion to Intervene. (ECF No. 167.) The Court granted the motion on August 30, 2023, following a hearing. (ECF No. 182.) Arkansas filed its supplemental brief on September 8, 2023, objecting to the proposed settlement. (ECF No. 183.)

On October 27, 2023, the Court entered an Order Granting Preliminary Approval of Proposed Settlement ("Preliminary Approval Order"), preliminarily approving the Settlement Agreement, overruling Arkansas's objections, and directing that notice be given to the members of the Settlement Class. (ECF No. 189.) On January 4, 2024, Plaintiffs filed their Motion for Attorneys' Fees. (ECF No. 194.)

Pursuant to the Settlement Agreement, Settlement Class Members were provided with notice informing them of the terms of the proposed settlement, their right to object and/or opt out and of the date and time of the Final Approval hearing. The purpose of that hearing was to determine whether: (a) the Settlement should be approved as fair, reasonable, and adequate to the Settlement Class; (b) a Final Approval Order and Final Judgment should be entered; (c) the Settlement benefits as proposed in the Settlement Agreement should be approved as fair, reasonable, and adequate; (d) to grant the Motion for Attorneys' Fees; and (e) to rule on any other matters that may properly be brought before the Court in connection with the Settlement. (ECF No. 189 at PageID 3949.) The deadline for members of the Settlement Class to object to

---

[3] On August 18, 2023, the Parties filed a Supplemental Submission in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 181.) This submission increased the period in which settlement class members may make their claims and revised the definition of the Settlement Class. (Id.)

the settlement, as well as the deadline to opt out of the case, was January 10, 2024. (Id. at PageID 3947.) No objections were received, and only twenty-five class members requested exclusion.[4] (ECF No. 198 at PageID 4074.)

On February 8, 2024, Plaintiffs filed this Motion for Final Approval (ECF No. 197), the terms and conditions of which are set forth in the Settlement Agreement (ECF No. 156-1). On April 5, 2024, the Court held the Final Fairness Hearing on the Plaintiffs' Motion for Final Approval.

I.  **Settlement Agreement Terms**

The Settlement Agreement provides for an uncapped, "claims made" settlement that provides a $25.00 Family Dollar gift card to all claimants who could attest that they shopped at a Family Dollar store serviced by Distribution Center 202 between January 1, 2020, and February 18, 2022. (ECF No. 173 at PageID 3422.) These gift cards are (a) limited to one per household; (b) may be used to purchase any item sold at Family Dollar stores, excluding purchases "prohibited or restricted by state law (such as alcohol and tobacco);" (c) are fully transferable; (d) can be used in conjunction with other promotions or discounts, including manufacturers' coupons and discounts; (e) will not expire; (f) do not require separate purchase or the use of the Settlement Class Member's money; and (g) can be used over multiple discrete transactions until the value is exhausted. (ECF No. 156 at PageID 3032–33.)

In exchange for this relief, the Settlement Class Representatives and Settlement Class Members release any and all claims arising from the practices and claims that were or could have

---

[4] Sixty-six requests for exclusion were received, however forty-one of those requests failed to meet the threshold requirements to either qualify as a Settlement Class Member or meet the opt-out requirements laid out in the Court's Preliminary Approval Order. (ECF No. 198 at PageID 4074.)

been alleged in this action.  (ECF No. 156-1 at PageID 3069–70.)  However, the Settlement expressly excludes and does not release any claims made by the Arkansas Attorney General in the Arkansas Case.  (Id. at PageID 3065.)  Further, Defendants reserve all rights to raise any and all defenses to the claims raised in that case, including that monetary relief would be inappropriate given the relief provided to consumers through this Settlement.  (Id.)

## ANALYSIS

**I.      Motion for Final Approval of Settlement**

Class action suits filed in federal court may only be settled with the court's approval.  See Fed. R. Civ. P. 23(e).  Settlement approval consists of three steps:  "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement."  Bailey v. Verso Corp., 337 F.R.D. 500, 505 (S.D. Ohio 2021) (citing In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001); Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)).  The Court previously preliminarily approved the proposed settlement.  (ECF No. 189.)  Thus, the Court turns to the second and third steps.

   A.      Notice Was Successful

The Court appointed administrator, Angeion Group, LLC ("Angeion") distributed the notice to the provisionally certified Rule 23 class members using a multi-pronged campaign which included:

- Direct email notice

- Digital Advertising

- Publication in People Magazine circulated in Alabama, Arkansas, Louisiana, Mississippi, Missouri, and Tennessee

- Paid google advertising

8

- A settlement website

- A toll-free telephone line

(ECF No. 198 at PageID 4074–75.)  The Court previously found in its Preliminary Approval Order that the Notice Plan was anticipated to adequately apprise all potential class members of the terms of the Settlement Agreement, provide the opportunity to make informed decisions, and comport with due process.  (ECF No. 189 at PageID 3944.)

The Declaration of Steven Weisbrot of Angeion highlighted the success of the notice program.  (ECF No. 199 (sealed).)  Angeion sent an email to 444,382 potential class members, along with a reminder email to 440,889 potential class members who had not yet filed a claim form.  (Id. at PageID 4091–92.)  Approximately 80.62% of the target audience of the Class saw the advertisements that were part of the digital media campaign.  (Id. at PageID 4092.)  The Settlement Website had more than 1,263,103 visits with 1,190,744 unique visitors.  (Id. at PageID 4093.)  The toll-free telephone line received 1,123 calls totaling 4,830 minutes.  (Id.)  This high engagement rate supports the Court's previous finding that notice was adequate in this case.

### B. Post-Hearing Final Consideration of Settlement

#### 1. Final Certification of the Settlement Class and Appointment of Class Representatives

In its Preliminary Approval Order, the Court conditionally certified the following class:

> All Persons who reside within Arkansas, Alabama, Louisiana, Mississippi, Missouri, or Tennessee, and from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store.

(ECF No. 189 at PageID 3929, 3946.)  The Court also provisionally appointed the Class Representatives.  There has been no information presented to alter the Court's previous

conclusions. For the same reasons the Court granted preliminary approval, the Court grants final certification of the Class and final approval of the appointment of the Class Representatives.

### 2.  *The Factors Support Approval of the Settlement*

Before a district court approves a settlement, it must find that the settlement satisfies the four factors under Rule 23(e)(2) for determining whether a settlement is "fair, reasonable, and adequate," namely that: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D). The Court stands by its previous finding in the Preliminary Approval Order that the settlement meets the Rule 23 factors. (Id. at PageID 3938–41.)

In addition to the Rule 23(e) factors, the Sixth Circuit also considers seven factors to determine whether a class action settlement is "fair, reasonable, and adequate." See Harsh v. Kalida Mfg., Inc., No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021) (citing UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). These factors are:

1. the risk of fraud or collusion;
2. the complexity, expense, and likely duration of the litigation;
3. the amount of discovery engaged in by the parties;
4. the likelihood of success on the merits;
5. the opinions of class counsel and class representatives;
6. the reaction of absent class members; and
7. the public interest.

Id. at *3–4. The Court found in its Preliminary Approval Order that factors one through five and factor seven were met. The Court noted that the assessment of factor six—the reaction of absent class members—would be addressed after the final approval hearing. The Court addresses that factor now.

An "overwhelming positive class response highlights the fairness of the settlements to

10

unnamed class members and weighs heavily in favor of approval of the settlements." In re Se. Milk Antitrust Litig., 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013). Here, there were no objections to the Settlement, and only twenty-five valid opt-outs were received. (ECF No. 198 at PageID 4074.) The lack of objections and low number of opt-outs also supports approval of the settlement.

## II.     Attorneys' Fees, Expenses, and Service Awards

### A.     Attorneys' Fees

"The Sixth Circuit permits calculation of attorneys' fees under either the lodestar method (multiplying the number of hours spent on the litigation by certain attorneys by their hourly rate) or the percentage of the fund method (counsel receive a set percentage of the total settlement fund)." In re Packaged Ice Antitrust Litig., No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" Van Horn v. Nationwide Prop. & Cas. Ins., 436 F. App'x 496, 498 (6th Cir. 2011) (quoting Rawlings v. Prudential–Bache Props., Inc., 9 F.3d 513, 516 (6th Cir.1993)).

Because this is not a common fund case, Plaintiffs assert that the lodestar method is appropriate. (ECF No. 194-1 at PageID 3970.) Plaintiffs' counsel seeks an award of $10 million, which applies a multiplier of about two. (Id. at PageID 3975.) Plaintiffs point out that the requested multiplier falls well within the range of those approved by courts in the circuit. (Id.) (citing Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010), on reconsideration in part (July 21, 2010) (collecting cases and sources with multipliers between 2.5 to 4); Arp v. Hohla & Wyss Enterprises, LLC, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D.

11

Ohio Nov. 5, 2020) (lodestar multiplier of 5.29 is "within the acceptable range")).

As Plaintiffs point out, the lodestar method is favored in cases where there is no common fund.  See, e.g., Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 546–47 (9th Cir. 2016). Although Plaintiffs' Motion for Attorneys Fees is unopposed, they still have the burden of providing evidence of hours worked and the reasonableness of rates charged.  Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 242 (1985).  In support of the reasonableness of their request, Plaintiffs submit a declaration from Interim Co-Lead Counsel, J. Gerard Stranch, IV, that lays out the hours and lodestar incurred by all counsel (ECF No. 195 at PageID 3986–99), firm resumes for Class Settlement Counsel, (id. at PageID 4004–47), and a Declaration of Brian T. Fitzpatrick, a professor at Vanderbilt University who focuses on class action litigation (ECF No. 202 at PageID 4222).

In this district, the Local Rules require parties to submit an affidavit or declaration of counsel detailing the number of hours spent on each aspect of the case and an affidavit or declaration from another attorney in the community, who is not otherwise involved in the case, setting out the prevailing rate in the community for similar services.  L.R. 54.1(b)(1)–(2).

Plaintiffs have not complied with either of the Local Rules requirements.  Although the declaration from Stranch lists the work done in this case (ECF No. 195 at PageID 3989–91), and provides the total number of hours work by each attorney (id. at PageID 3993–96), Plaintiffs have not demonstrated how much time was spent on each aspect of the case.  Although not required, one way to satisfy this requirement is to submit billing records or affidavits from each attorney detailing their work.  Plaintiffs also failed to include an affidavit or declaration from another attorney in the community who is not involved in this case that the hourly rates charged here are reasonable.

Because of these deficiencies, Plaintiffs' Motion for Attorneys' Fees is **DENIED WITHOUT PREJUDICE.** Plaintiffs may refile their Motion so long as it is brought into compliance with this Court's Local Rules.

B.   Expenses

To determine whether the requested expenses are compensable, the Court considers whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases. In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 535 (E.D. Mich. 2003). Plaintiffs request reimbursement of litigation expenses in the amount of $247,589.77 to cover amounts expended out-of-pocket in the prosecution of the case. (ECF No. 201 at PageID 4219.) Plaintiffs seek to cover the following expenses: 1) meals, hotels, and transportation; 2) filing fees, service, and court fees; 3) Federal Express, local carrier, postage, and calls; 4) photocopying; 5) temporary professionals; 6) witness/service fees; 7) computer research; 8) scans, Pacer, and experts; and 9) litigation fund expenses. (Id.)

Finding these expenses to be routine and reasonable, the court **AWARDS** $247,589.77 in expenses.

C.   Service Awards

Plaintiffs also request the approval of service awards totaling $44,000, with eight class representatives (Sheena Bibbs, Tina Bishop, Julian Graves, Martha Lacy, Taylor Lorimer, Sonya Mull, Vinnie Smith, and Jerome Whitney) each to receive $5,000 and two class representatives (Beverly Gordon and Sandra Walker) each to receive $2,000. (ECF No. 195 at PageID 4001.) The amount of the award is based on the representative's level of involvement in the case. (Id.)

The Sixth Circuit has not defined the circumstances where service awards to class representatives are justified. See Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766, 787

(N.D. Ohio 2010). However, district courts in this Circuit have considered three factors when considering these requests: (1) actions taken by Class Representatives to protect the interests of Class members and others and whether these actions resulted in substantial benefit to Class members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursing the litigation. See Robles v. Comtrak Logistics, Inc., 2022 WL 17672639, at *12 (W.D. Tenn. Dec. 14, 2022) (citing Ross v. Jack Rabbit Servs., LLC, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016)).

Here, all three factors weigh in favor of the requested service awards. First, the Class Representatives were essential in ensuring that this case was brought because they, rather than a government agency, helped to initiate the case. (ECF No. 194-1 at PageID 3984.) Second, by being named plaintiffs in a lawsuit, they risked retaliation for their participation. (Id.) Finally, each of the named plaintiffs spent considerable time pursuing the litigation. (Id.) Accordingly, the Court **AWARDS** $44,000 in service awards, consistent with the terms outlined above.

## CONCLUSION

The Court finds that the proposed settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class Members. Accordingly, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement unless stated otherwise herein.

2.     The Court has jurisdiction over this Action and the parties.

3.     The Court has reviewed the Notice Plan, and the Declaration of Steven Weisbrot of Angeion Group, LLC describing the results of the notice campaign, and finds that the Notice

Plan constituted the best notice practicable under the circumstances to all Settlement Class Members and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4. The Court finds that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied and **CERTIFIES** the following Settlement Class:

> All Persons who reside within Arkansas, Alabama, Louisiana, Mississippi, Missouri, or Tennessee, and from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store.

Excluded from the Settlement Class are: (i) Defendants; (ii) Defendants' agents, parents, officers, predecessors, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants; (iii) Class Counsel and any other attorneys who represent Settlement Class Representatives or the Settlement Class in this Action, as well as their agents and employees; (iv) the judicial officers and court staff assigned to this case, as well as their immediate family members; and (v) Persons who timely requested to be excluded from this Settlement.

5. Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby **GRANTS** final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class Members based on, among other things, the factors enumerated in <u>UAW v. Gen. Motors Corp.</u>, 497 F.3d 615 (6th Cir. 2007).

6. All objections to the Settlement are overruled.

7. A list of those who have timely opted out of the Settlement and who therefore are not bound by the Settlement Agreement has been submitted to the Court as Exhibit J to the Declaration of Steven Weisbrot of Angeion Group, LLC. That list is incorporated by reference

herein.  All other members of the Settlement Class are subject to all provisions of the Settlement Agreement and this Court's Order approving the Settlement Agreement.

8.     The Release set forth in Paragraph 6 of the Settlement Agreement is incorporated herein by reference and all Settlement Class Representatives and Settlement Class Members shall be fully subject to all of these provisions.

9.     Upon the Effective Date: (i) the Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Representatives and Settlement Class Members; and (ii) Settlement Class Representatives and Settlement Class Members stipulate to be and shall be permanently barred from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal any and all Released Claims.  Accordingly, the Settlement shall terminate the Action.

10.    For the reasons stated above, Plaintiffs' Motion for Attorneys' Fees is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' request for attorneys' fees is **DENIED WITHOUT PREJUIDCE** and their request for expenses is **GRANTED**.

11.    The Action, and all claims asserted therein, is settled and is dismissed on the merits with prejudice, as set forth in the Final Judgment.

12.    Consummation of the Settlement shall proceed as described in the Settlement Agreement, and the Court reserves jurisdiction over the subject matter of the Action, the parties, and the Settlement Class Members with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the instance of any party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

13. In the event that any applications for relief are made, such applications shall be made to the Court.

14. The Settlement and this Order do not constitute an admission of wrongdoing, fault, liability, or damage of any kind, including with respect to the Settlement Class Representatives or any of the Settlement Class Members.  Defendants deny the material factual allegations and legal claims asserted in the Action, including any and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged in the Action.  The Settlement and this Order provide for no admission of wrongdoing or liability by any of the Released Parties.  To the extent permitted by law, neither this Order, nor any of its terms or provisions, nor any of the negotiations or proceedings committed with it, shall be offered, received, deemed to be, used as, construed as, and do not constitute a presumption, concession, admission, or evidence of (i) the validity of any Released Claims or of any liability, culpability, negligence, or wrongdoing on the part of the Released Parties; (ii) any fact alleged, defense asserted, or any fault, misrepresentation, or omission by the Released Parties; (iii) the propriety of certifying a litigation class or any decision by any court regarding the certification of a class, and/or (iv) whether the consideration to be given in this Settlement Agreement represents the relief that could or would have been obtained through trial in the Action, in any trial, civil, criminal, administrative, or other proceeding of the Action or any other action or proceeding in any court, administrative agency, or other tribunal.

15. Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order in a proceeding to consummate or enforce the Settlement or this Order, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

16.     The parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications, and expansions of the Settlement Agreement: (i) as are consistent with the Final Approval Order and the Final Judgment, and (ii) which do not materially limit the rights of Settlement Class Members under the Settlement Agreement.  A separate judgment consistent with this Order will issue pursuant to Fed. R. Civ. P. 58.

**IT IS SO ORDERED,** this 6th day of May, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
